ROBERT CAMERON

*v.*

GEORGE W. SAVAGE *et al.*

1. FRAUD—*evidence of.* The fact, that a man, with his family, resides upon land claimed by his father-in-law; and cultivates, uses and occupies it; paying taxes in his own name, is not evidence that he is the owner; and that the title is kept out of him to defraud his creditors.

2. SAME. The advice of such occupant to the owners to sell a tax title, under which they claim the land, to a third person, is not evidence that it is purchased by such third person on a secret trust for the benefit of the occupant.

And the occupant, having previously contracted for the purchase of the patent title to the land, and forfeited the contract, and that title afterwards having been purchased by the same person who had purchased the tax title, does not prove that such third person holds the title for the benefit of the occupant.

3. SAME. A proposition by the person who had thus purchased the title, that if the neighbors of the occupant who complained of his course in the matter would raise and pay him a certain sum of money, that he would convey to the children of the occupant, does not prove that he is fraudulently holding the title to defraud the creditors of the occupant.

4. RULE OF COURT—*to produce papers.* A rule of court, that defendant produce the remaining part of a letter, a portion of which he had attached to a commission to take depositions, or show cause, is properly answered and discharged, when, in answer to the rule, the party denies that he has the other part, and states that he believes it to be lost or destroyed.

WRIT OF ERROR to the Circuit Court of Warren county; the Hon. CHARLES B. LAWRENCE, Judge, presiding.

The plaintiff in error, on the 23d day of February, 1863, filed his bill in chancery, in the nature of a creditor's bill, against the defendants in error, in the Warren Circuit Court.

The bill, after setting out the judgment of the complainant against Fletcher, and a return *nulla bona* to the execution issued thereon, and that the same remains unpaid and unsatisfied, proceeds to make general allegations against defendant, averring a fraudulent sale and collusion, together with the following specific allegations :

"And your orator further shows, that said Fletcher, on or about the 1st day of August, A. D. 1859, was, and had been, in possession of the southeast quarter of section one, in township nine, north of range two, west of the fourth principal meridian, in Warren county, Illinois, for more than ten years then past, and had been, and was, the owner thereof, although the legal title thereof was in a certain person by the name of Russell Parsons, or some other person who was a relative of said Fletcher, and that the title was not in said Fletcher, because said Fletcher intended thereby to defraud his creditors, and that some time about the year 1861, the said Parsons, or his heirs, pretended to convey the said land to said Savage, who was acting in collusion with said Fletcher, for the purpose of defrauding his creditors, and that the same is held in trust by the said Savage, for, and in behalf of said Fletcher, and for his use.

"And your orator further shows, that in the year 1859 or 1860, or about that time, the said Fletcher, for the purpose of defrauding his creditors, transferred to said Savage all of his personal property, consisting of horses, cows, cattle, hogs,

wagons and harness and other property, and that he has secreted the same until he was enabled to sell the same, when he sold the same and used the proceeds thereof in and for his own use, and that said Savage has been continually colluding and conspiring with said Fletcher, in order to defraud your orator, and for that purpose, in addition to said facts, has obtained several judgments in this court and elsewhere to a large amount, which judgments were founded on no consideration whatever, but made and confessed for the purpose of defrauding your orator in the premises."

The oath of defendants to their answers was waived.

At the March term, the defendants filed separate answers, which are the same in statement. The substance of Savage's answer is as follows:

That Fletcher was not in possession of said land ten years, but about seven or eight years. Denies that Fletcher was the owner, but asserts that he was only tenant at will. That the legal title to said land was not in said Russell Parsons, or his heirs; but, on the contrary, Parsons, in his life time, held only a tax title thereto, derived from the auditor's sale of 1833, for the non-payment of taxes, dated in 1835, conveying the land to Parsons. That Parsons had never paid taxes for seven consecutive years after the year 1839. That the wife of said Fletcher was a daughter of said Parsons, and Fletcher was permitted to occupy the land without any lease, contract or grant whatever, as tenant at will; that Fletcher so occupied, so claimed, and had no other claim thereto. That in 1858 and 1859, Fletcher was honestly indebted to him, and is yet between $700 and $800, for money advanced for professional services, interest, etc. That Fletcher became insolvent, etc., and knows of no way complainant's judgment may be satisfied, but he denies that he has any property in his hands or equitable thing whatever, in which Fletcher has any right, and never had.

That some years ago, Russell Parsons died, leaving six heirs, to whom said tax title and others descended. That in 1861, he purchased all the interest of said heirs, except the wife of Fletcher, who had before departed this life, leaving several children and some eleven lots of land in the west, held by similar titles, and not regarded by them as valuable, for $300, which he paid with his own money.

Denies that he bought at Fletcher's request for him, and in collusion with him.

Denies that he holds it for Fletcher, but, on the contrary, asserts that Fletcher endeavored by letter and dispatch to prevent said heirs from selling to him. That when he obtained the tax deed to said land, one J. C. Scroggs, of Galesburg, Ill., held the patent title to said land, and was threatening to bring suit for possession thereof, against Fletcher, and he was anxious to get possession himself under his tax deed, so that he could better defend said suit, or make a compromise. That he went to Fletcher and told him that he would be ejected in all probability from said premises by the holder of the patent title, as he had no title under which he could defend, to which Fletcher assented, and therefore proposed and agreed to take a lease and become respondent's tenant, so that respondent could better defend or compromise. That Fletcher then became his tenant, and took a written lease, which he cannot produce, because he has not the control thereof.

After which, he compromised said suit, and purchased the title of Scroggs, being the patent title, which he paid for out of his own money and for his own use, and not at the solicitation of Fletcher. That when Scrogg's deed was made, he expected to sell the land, and at his suggestion, Scroggs made the consideration $600 instead of $200, the actual consideration, which he had done solely to enable him to sell the same to a better advantage, and nearer its true value.

Denies that in these transactions he acted for the purpose of hindering, delaying or defrauding the creditors of Fletcher, but, on the contrary, asserts the fact to be that instead of acting in collusion with Fletcher, he acted in opposition to him and his wishes. That in the year 1859 or 1860, Fletcher did execute to him a chattel mortgage of all his personal property in said bill described to secure an indebtedness due from Fletcher to respondent, but he never had possession of the same or any part thereof, and never disposed of it, and never secreted the same, but that the same was left with Fletcher, and that complainant or some other creditor had the same sold under execution. That the mortgage was executed to him at Fletcher's request; that Fletcher owed him a large sum of money as already stated, but at the time no settlement had been made between them, and neither knew the precise amount due. That the mortgage was given to secure $1,200 which they supposed might be about the amount due. Admits that afterwards, on settlement, they found but about $750 due, for which a note was given. That the note was *not* given for money loaned and advanced for hay sold by Fletcher for respondent and for professional services and interest; but as to the amount of each particular, he cannot certainly answer, but believes he advanced above $450 cash for the use and benefit of Fletcher. Hay about $180, and the rest for professional services and interest. That the judgment in the Circuit Court of Warren county was obtained on said note. That no consideration was given Fletcher to induce him to become tenant of respondent. Admits that Fletcher transferred a horse to respondent, (but no other property,) worth $100, and that he credited $125 on his judgment for the horse.

Replication was filed to Fletcher's and Savage's answers.

At the October term, 1863, there was a hearing on the bill, answers, replications, exhibits and proof, when a decree was rendered, dismissing the bill without prejudice. To

reverse that decree, the complainants bring the case to this court, and assign the following among other errors :

The court erred in entering a decree dismissing the bill.

The court erred in not entering a decree, according to the prayer of the bill, in favor of plaintiff in error, and subjecting the land described in the bill to be sold to satisfy plaintiff's judgments, and also against Savage for the amount of personal property he secreted and sold belonging to Fletcher.

Mr. A. J. KIRKPATRICK for plaintiff in error.

Messrs. GLOVER, COOK & CAMPBELL for defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the court :

It appears from the evidence that Russell Parsons was the owner, by tax title, of the quarter of land in dispute. That Fletcher, his son-in-law, had occupied it for about ten years. Had improved and cultivated it without paying rent. It also appears Savage purchased the interest of all of Parson's heirs, except Mrs. Fletcher, in this and eleven other quarters held by tax title, and had purchased the patent title to the land in controversy, as alleged in the answer. Nor do we find that there is any direct evidence that Savage held, or professed to hold, for Fletcher. Nor is there any testimony shewing that his money was paid for the land, or that there was any secret understanding that he was to refund it and become the owner of the property. There is also a want of evidence to shew that Fletcher ever paid Parsons for the land, or that any arrangement existed by which he was, in any event, to become the owner. And in the absence of such proof, it may be supposed that the father-in-law simply permitted him to occupy the land as a means of supporting his family. That he was willing to give him the use of the land but not the title.

12

· It is true that Fletcher is proved to have called the land his, and to have exercised such acts over it as is usual by an owner. But these declarations are not evidence against Savage. He never seems to have admitted that Fletcher was the owner after he acquired the tax and patent title. And the acts of Fletcher, after that time, were consistent with the relation of landlord and tenant. It is insisted, as evidence of ownership, that Fletcher agreed upon the terms of a lease, but he referred the parties to Savage, who said Fletcher had no right to lease the property. It is true that Fletcher said at the time, that if he leased the property complainant would get the rent, but we find no evidence connecting Savage, in any way, with this declaration, and unless there was, he cannot be bound by the declarations of a third person. There may be an abundance of evidence to warrant a decree against Fletcher if he had any title, but that does not warrant a decree against Savage.

It is, however, said that Savage proposed, when the neighbors complained of his course in the matter, that if they would make up a certain sum of money, (the witness was not able to state whether it was three or five hundred dollars,) he would deed the property to Fletcher's children. We do not perceive that this proves any interest whatever in Fletcher. Again, it is said that Savage admitted that he intended to convey half of the land to Fletcher's children. Suppose he did, does that, of itself, prove that Fletcher had any legal or equitable interest in the land? We think not. He at that, or no other time, seems to have admitted that he was under any legal or equitable obligation to convey. But if he was under such an obligation to them, it does not follow that he would be to the father, and the complainant can only be subrogated to the rights of his debtor.

Nor do we see that the evidence establishes any collusion in declaring Fletcher's contract with Scroggs forfeited, and in the sale by him to Savage. Scroggs had used all reasonable efforts to make the money out of Fletcher, but seems to have failed. It is not denied that Scroggs had the right to

declare the forfeiture, and we cannot infer that it was collusion simply because Fletcher was in Galesburg on the day Savage purchased the patent title.  Scroggs testified that he was informed that Fletcher was in the city on that day to protest against the sale, but did not see him.  Had it been a part of a plan, to cover up collusion, that Fletcher should be there to object to the sale to Savage, we may suppose that he would have carried out the plan, by seeing Scroggs, and protesting against the sale.  It is true that Scroggs says he had the impression that Savage was purchasing for Fletcher, but can state nothing that was said by Savage to produce such an impression.  Loose and indefinite impressions of witnesses are too weak and uncertain upon which to transfer the title of property from one person to another.  To authorize such a decree, there must be evidence, and not mere impressions of witnesses, without facts to sustain them.

It is insisted that, as Fletcher signed a letter to Parson's heirs, advising the sale of the lands to Savage, it must, therefore, have been for Fletcher's benefit.  We cannot see any proof of the supposition from this fact.  The treaty was for tax titles to twelve quarter sections of land, owned by the heirs of Parsons ; and when the judicial history of this class of titles is considered, it is not strange that a person residing in Illinois should advise a friend living in a distant State to dispose of them at a price small in comparison with the value of the lands.  But, be that as it may, Fletcher afterwards, for some reason, telegraphed to the heirs not to sell.

It is also supposed, that the fact that Fletcher paid the taxes on the land in controversy, is evidence of his ownership. Admit that he did pay them in his own name, that only proves, that as he was occupying the land, free from rent, he felt it to be his duty to relieve his father-in-law from the burthen, and as some compensation for its use ; or it might have been to prevent some other person from acquiring a tax title, and to avoid expense in defending his possession.  And

it seems, that when he failed to pay, the county clerk suggested to Savage that he should purchase the land at the tax sale.

It is likewise urged that the judgment, held by Savage against Fletcher, was fraudulent, and only obtained and kept on foot for fraudulent purposes, and to prevent Fletcher's creditors from collecting their debts.

The production of a judgment between the parties is *prima facie* evidence as to third persons, of such indebtedness, and and there seems to be no evidence to overcome its effect. There was evidence that Savage had attended to business for Fletcher, as his attorney, and none to rebut it. Complainant alleged that all of these transactions were fraudulent. And it devolved upon him to prove the allegations of his bill. To that end he called for the answers, but they afforded no evidence, but left him to make the proof by other means, and we think he has failed in his effort.

It is again urged, that the court erred in not compelling Savage to produce the remainder of the letter, a part of which he made an exhibit in the commission to take Marcus Parson's deposition. It seems he produced another part of a letter, and stated in an affidavit in answer to a rule to produce it, that he had made diligent search and was unable to find the paper, and believed it was lost. We think, from an examination of the affidavit, he sufficiently answered the rule, and that the court committed no error in discharging it. After a careful examination of this entire record, we are unable to perceive any error, for which the decree of the court below should be reversed. It is, therefore, affirmed.

*Decree affirmed.*

Mr. JUSTICE LAWRENCE having tried the cause in the court below, took no part in this decision.